UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-CR-0020 (PJS/JJK) |
| Plaintiff, | |
| v. | MEMORANDUM |
| FRANK RUSSELL MCCOY, | |
| Defendant. | |

    Katharine T. Buzicky, UNITED STATES ATTORNEY'S OFFICE; Jeffrey Zeeman, UNITED STATES DEPARTMENT OF JUSTICE, for plaintiff.

    Michael C. Hager, HAGER LAW OFFICE, for defendant.

    Defendant Frank Russell McCoy was charged with possession of child pornography. The charge against McCoy was based on child pornography that was found on his computer by probation officers who were supervising him while he was appealing his conviction for transporting obscene materials. McCoy moved to suppress that evidence, arguing that the search of his computer violated the Fourth Amendment. Magistrate Judge Jeffrey J. Keyes recommended that McCoy's motion to suppress be denied in a Report and Recommendation dated October 1, 2015.

    McCoy objected to the R&R, and the Court conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court denied

McCoy's motion to suppress in a brief order dated December 2, 2015.[1] In that order, the Court said the following: "The Court largely agrees with the reasons given by Judge Keyes for denying the motion[]. The Court will expand upon those reasons in a memorandum that it will issue in the near future." ECF No. 89 at 2.

The case was tried to a jury, and McCoy was convicted on December 8, 2015. As promised, the Court now issues this memorandum to more fully explain its reasons for denying McCoy's motion to suppress.

I. BACKGROUND

In March 2013, McCoy was convicted of transportation of obscene matters in violation of 18 U.S.C. § 1462 in the United States District Court for the Middle District of Georgia. *United States v. McCoy*, 937 F. Supp. 2d 1374 (M.D. Ga. 2013), *aff'd*, 602 F. App'x 501 (11th Cir.), *cert. denied*, 136 S. Ct. 122 (2015). McCoy's crime involved using email to distribute stories that he had written about the sexual molestation of young children. *Id.* at 1376. Most of those stories involved parents having sex with their children or siblings having sex with each other. McCoy was also found to possess approximately 20,000 images and almost 200 videos of child pornography on his computer. June 29, 2015 Hr'g Ex. 2 at 4. Somewhat surprisingly, McCoy was released while he appealed his conviction and allowed to return to his home in Minnesota. *Id.*

---

[1]McCoy also moved to suppress statements that he made to probation officers. The Court denied that motion for the reasons explained in the R&R.

at 5.  Even more surprisingly, McCoy was given permission to use computers, albeit subject to the following conditions:

> 1.  The defendant can use and access the internet and email for all lawful purposes;
>
> 2.  The defendant's use and access of email and the internet shall be permitted, provided that he does not transmit any of the stories that are the subject of the instant case, or stories and materials of a similar nature;
>
> 3.  and, provided that he will be subject to random inspections of his computer's internet and email usage history by the Pre-Trial Services Officer assigned to his case, in order to ensure compliance with the parameters of these conditions.  However, his correspondence with his attorneys shall not be the subject of such inspections.

June 29, 2015 Hr'g Ex. 1 at 1-2.

Probation Officers Timothy Norgren and Lisa Martinetto visited McCoy in December 2013.  June 29, 2015 Hr'g Tr., ECF No. 56, at 9.  Norgren (but not Martinetto) had visited McCoy in the past.  *Id.* at 27-28.  McCoy welcomed them into his house.  *Id.* at 10.  Martinetto saw ". . . a lot of computer equipment.  Software boxes, computer components, piles of different computer hardware throughout the home."  *Id.* at 11.  McCoy told Martinetto about his experience building, programming, and repairing computers; he claimed, for example, that he programmed computers in 50 different languages, and that he had built at least two computers in his home.  *Id.* at 11-12.

McCoy told Martinetto that his main computer had five hard drives: one running Windows, one running DOS, and three that were arrayed in a Redundant Array of Independent or Inexpensive Disks (or "RAID") system. *Id.* at 12-13. A RAID system is an advanced system that "allows storage of data in multiple places." *Id.* at 13. Such a system is rarely found in personal computers; it is more commonly found in computers that act as servers. *Id.*

During his earlier visits to the house, Norgren had seen only one laptop computer; he told Martinetto that he was surprised to see that McCoy had accumulated so much computer equipment in such a short period of time. *Id.* at 12. McCoy told Martinetto that he had a total of eight hard drives in his home. *Id.* at 13. McCoy also said that he had written a program to remove pornography from his computer, and McCoy invited Martinetto to look at his computers. *Id.* at 14. Martinetto declined the invitation because she was unsure of McCoy's release conditions and because he had so many hard drives. *Id.*

Martinetto then contacted Anthony Lindsey, the probation officer to whom McCoy's case had been assigned in the Middle District of Georgia. *Id.* at 15. Martinetto told Lindsey what Norgren and she had seen during their visit to McCoy's home. July 29, 2015 Hr'g Tr., ECF No. 59, at 6-7. Lindsey then sought guidance from United Stated District Court Judge W. Louis Sands, who had sentenced McCoy and imposed

the conditions on which McCoy had been released. *Id.* at 8-9. Judge Sands directed Lindsey to ask Martinetto to remove McCoy's computer equipment and send it to Georgia so officers could search it to make sure that McCoy was complying with his release conditions. *Id.* Specifically, Judge Sands wanted officers to "review the computer data to make sure . . . McCoy had followed the conditions" and neither "disseminated any more of his stories" nor possessed child pornography. *Id.* at 9. Lindsey then relayed Judge Sands's instructions to Martinetto. *Id.* at 9-10.

After receiving Judge Sands's instructions, Martinetto and other probation officers removed McCoy's computer equipment and shipped it to Georgia. June 29, 2015 Hr'g Tr. at 20-22. In Georgia, Probation Officer Todd Garrett began to search McCoy's hard drives. July 29, 2015 Hr'g Tr. at 29. He first made a copy of each drive so he could search the copies and not risk altering the originals. *Id.* at 29-30. When he started looking at one of the copied drives, Garrett noticed that the drive was unformatted, which means that "the normal directories, subdirectories, and the folders or files that one might expect in a Windows installation . . . were not present." *Id.* at 32. One reason a computer user might "unformat" a hard drive is to make it difficult for others to see the data contained on that drive. *Id.* at 33.

Garrett then used special software to search the unformatted hard drive for .jpeg image files. *Id.* at 31, 33. He testified that searching for .jpeg files "will often [reveal] a

user's web-browsing activities." *Id.* at 33.  Garret's search revealed "abusive images" of prepubescent children engaged in sexually explicit conduct.  *Id.* at 34.  These images appeared to have come from videos, which, in turn, appeared to have been downloaded from the Internet.  *Id.* at 34-35.

Garrett informed Lindsey that he found child pornography on McCoy's hard drive.  *Id.* at 10-11.  Lindsey passed the message along to Judge Sands and then successfully petitioned the court to revoke McCoy's supervised release.  *Id.* at 11.  United States Magistrate Judge Thomas Q. Langstaff later issued a search warrant authorizing officers to search McCoy's computer equipment.  June 29, 2015 Hr'g Ex. 2.  The application for that warrant cited the images that Garrett found on McCoy's hard drive.  *Id.* at 5-7.  The search conducted pursuant to the warrant uncovered approximately 100 videos of child pornography.

McCoy moved to suppress all of the evidence found on his computer.  McCoy made three main arguments:  (1) Martinetto did not have authority to remove his computer equipment from his home and send it to Georgia to be examined; (2) Garrett did not have authority to conduct the warrantless search of the unformatted hard drive; and (3) because the application for the search warrant issued by Judge Langstaff relied on images that had been found by Garrett, the warrant was the fruit of the poisonous tree, and thus all evidence discovered pursuant to that warrant must be suppressed.

## II. ANALYSIS

### A. *Initial Search and Seizure*

#### 1. The Initial Search Was Within the Scope of the Search Condition

McCoy's conditions of release provided that he was to be "subject to random inspections of his computer's internet and email usage history by the Pre-Trial Services Officer assigned to his case . . . ." McCoy argues that Garrett's search of his hard drive exceeded the scope of this condition in two respects: First, McCoy argues that any "random inspection" of his computer had to occur at his home, and thus Martinetto and her colleagues were not authorized to remove his equipment and send it to Georgia for examination. Second, McCoy argues that the search conducted by Garrett—which involved searching for every .jpeg file on his computer—exceeded the scope of the search condition, which authorized inspection of only "his computer's internet and email usage history."

McCoy's first objection is meritless. As Judge Keyes pointed out, nothing in the conditions of release limited the authorized "random inspections" to inspections conducted at McCoy's home. Indeed, the Court cannot imagine why any judge would authorize only on-site inspections. Those on supervised release can easily accumulate a great deal of computer equipment in a short period of time (as McCoy demonstrated), and a meaningful inspection of such equipment requires time, training, software, and

equipment that a typical probation officer does not have. The order imposing conditions of release on McCoy clearly authorized random inspections of his computer, and nothing in that order required those inspections to be conducted at McCoy's home.

McCoy's second objection is also unpersuasive. As noted, one of the conditions that applied to McCoy was that ". . . he will be subject to random inspections of his computer's internet and email usage history by the Pre-Trial Services Officer assigned to his case, in order to ensure compliance with the parameters of these conditions." Every major web browser (such as Internet Explorer or Firefox) creates a record of recently visited websites. As McCoy reads the search condition, it authorized access to nothing but the histories maintained by his web browsers. Thus, according to McCoy, Garrett exceeded the scope of the condition when he searched for every .jpeg file on McCoy's hard drive.

McCoy's reading of the search condition is not reasonable—particularly given the context. McCoy was on supervised release after being convicted of distributing obscene materials over the Internet and after being found to have used the Internet to amass a large collection of child pornography. McCoy was allowed to use computers, but he was forbidden from using the Internet to distribute or acquire obscene materials or child pornography. The express purpose of the search condition was "to ensure compliance with the parameters of these conditions."

Internet use entails more than just web-browser use. Indeed, one of the most common (if not *the* most common) methods that defendants use to transmit and receive child pornography is a peer-to-peer network, which does not involve the use of a web browser. There is no conceivable reason why Judge Sands would want officers to look for evidence that McCoy had downloaded child pornography through a web browser, but not for evidence that McCoy had downloaded child pornography through some other means (such as peer-to-peer software).

Moreover, even if for some strange reason Judge Sands was concerned only about McCoy using a web browser to download child pornography, evidence of such web-browser use is found in many places in a computer, not just in the history maintained by the web browser itself. And, of course, the history maintained by the web browser is quickly and easily erased. Even a computer user without McCoy's considerable expertise knows (or can quickly learn from the Internet, *see* http://www.wikihow.com/View-Browsing-History) how to clear a web-browser history with a couple of clicks of a mouse. It defies belief that Judge Sands or any other judge imposing conditions on a defendant such as McCoy would not only restrict probation officers to evidence that a *web browser* had been used to download child pornography, but to the most easily erased evidence of such web-browser use.

Recall, too, that the search condition authorized not just inspections of McCoy's "internet . . . usage history," but also of his "email usage history." Email programs, unlike web browsers, generally do not keep a readily accessible history. If an officer wants to inspect the "email usage history" of a defendant, the officer needs to inspect multiple folders on the defendant's computer—including the "inbox" and "sent" folders—as well as any attachments that had been received by email and downloaded to the computer. Obviously, this would require a thorough inspection of the hard drive.

In short, it is simply not reasonable to read the search condition (as McCoy does) to authorize only inspections of web-browser histories. Rather, it is reasonable to read the search condition (as the probation officers and, apparently, Judge Sands himself did) to authorize inspections of any file on a computer that might provide evidence of "internet and email usage history." This is confirmed by the fact that the search condition explicitly warned that "correspondence with his attorneys shall not be the subject of such inspections." This warning would hardly be necessary if the inspections were limited to web-browser histories, as those histories never contain correspondence, but just lists of websites visited.

Reasonably read, the search condition authorized Garrett to view the .jpeg files on McCoy's hard drive. The government has introduced uncontroverted evidence that .jpeg files commonly provide evidence of Internet and email use. *See* July 29, 2015 Hr'g

Tr. 33-34. Garrett's search is illustrative; the .jpeg files that he found appeared to have come from videos that McCoy downloaded from the Internet. The Court thus agrees with Judge Keyes's conclusion that Garrett's search fell within the scope of McCoy's search condition.

2. The Initial Search Had To Be Based On Reasonable Suspicion

The fact that Garrett's search fell within the scope of McCoy's search condition does not mean that it was *constitutional*. The search still must pass muster under the Fourth Amendment. In deciding whether the search was constitutional, this Court must "evaluate the search . . . under traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999).

In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the Supreme Court rejected a Fourth Amendment challenge to the search of the home of a probationer pursuant to a Wisconsin regulation that permitted a probation officer to search a probationer's home without a warrant as long as there were "reasonable grounds" to believe that the search would find evidence of a probation violation. The Supreme Court explained that "[a]lthough we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), we

have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id.* at 873 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)). The Supreme Court found that "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873-74. In light of those "special needs," the Supreme Court found that the warrant requirement was "impracticable" and that the state was justified in replacing "the standard of probable cause" with the standard of "reasonable grounds." *Id.* at 876. Because the regulation was valid, and because the search of the probationer's home was conducted pursuant to the regulation, the Supreme Court concluded that "[t]he search . . . was 'reasonable' within the meaning of the Fourth Amendment . . . ." *Id.* at 880.

In *United States v. Knights*, 534 U.S. 112 (2001), the Supreme Court rejected a Fourth Amendment challenge to a search of a probationer's home conducted by law-enforcement officers seeking evidence that the probationer was involved in an ongoing series of crimes. *Id.* at 114-15. The search was conducted pursuant to a judicially imposed condition of probation that authorized searches of the probationer's home "'by any probation officer or law enforcement officer'" without a warrant and without any type of suspicion. *Id.* at 114. After examining all of the circumstances—"the probation

search condition being a salient circumstance"—the Supreme Court upheld the search because it was authorized by the probation condition and was, in fact, supported by reasonable suspicion. *Id.* at 118.

In reaching its conclusion, the Supreme Court weighed the degree to which the search intruded on the legitimate privacy interests of the probationer against the degree to which the search promoted legitimate governmental interests. The Court found, on the one hand, that the probationer's expectation of privacy was "significantly diminished" by the search condition. *Id.* at 119-20. The Court found, on the other hand, that the government had a strong interest in rehabilitating the probationer and protecting society from further criminal activity by the probationer. *Id.* at 120-21. The Supreme Court concluded that "the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house" and that "[t]he same circumstances . . . also render a warrant requirement unnecessary." *Id.* at 121.

In light of *Griffin* and *Knights*, this Court concludes that Garrett's search of McCoy's hard drive did not violate the Fourth Amendment if the search was supported by reasonable suspicion that the search would uncover evidence of a crime or other probation violation. Three factors are critical to the Court's conclusion:

-13-

First, like someone on probation or parole, McCoy had been convicted of a crime. He thus was "no longer entitled to a presumption of innocence or presumptively entitled to his freedom." *United States v. Kills Enemy*, 3 F.3d 1201, 1203 (8th Cir. 1993). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting [supervised release] may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119.

Second, McCoy had a severely diminished expectation of privacy in his computer equipment. McCoy had been convicted of using his computer to transport obscene materials, and a large collection of child pornography had been found on that computer. Judge Sands allowed McCoy to remain free pending the appeal of his conviction, but he forbade McCoy from using his computer for unlawful purposes, and he ordered that McCoy be subject to "random inspections of his computer's internet and email usage history" to enforce that restriction. Under these circumstances, McCoy did not have a reasonable expectation of privacy regarding any file on his computer that could provide evidence of his "internet and email usage history." *See id*. at 119-20 ("The probation order clearly expressed the search condition and Knights was unambiguously informed of it. The probation condition thus significantly diminished Knights' reasonable expectation of privacy." (footnote omitted)).

Finally, the government had a strong interest in monitoring McCoy's use of his computer.  When a person is on supervised release pending appeal, "there is a heightened need for close supervision of the convicted person's activities to protect society and the releasee himself, and the releasee is entitled only to a conditional liberty."  *Kills Enemy*, 3 F.3d at 1203 (discussing a presentence releasee).  Those who have been placed on supervised release after being convicted of a crime are more likely than ordinary citizens to violate the law and "to conceal their criminal activities and quickly dispose of incriminating evidence."  *Knights*, 534 U.S. at 120.  Obviously, then, the government had a strong interest in ensuring that McCoy did not again use his computer to distribute obscene materials or collect child pornography.

Weighing the government's strong interests against McCoy's minimal expectation of privacy, the Court finds that the probation officers needed (at most[2]) reasonable suspicion to inspect McCoy's computer equipment.

### 3. The Initial Search Was Based On Reasonable Suspicion

"Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing."  *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010).

---

[2]Because Garrett's search fell within the scope of the search condition, Garrett might not have needed *any* suspicion to undertake that search.  *See Samson v. California*, 547 U.S. 843, 857 (2006).  The Court need not reach that question, however, because the Court finds that the officers had reasonable suspicion.

Here, the probation officers knew that McCoy had been convicted of transporting obscene materials and that child pornography had been found on his computer. Martinetto saw an unusually large amount of computer equipment in McCoy's home, and Norgren informed her that McCoy had accumulated almost all of that equipment since Norgren's last visit. Martinetto knew that McCoy was a computer builder and sophisticated programmer; in fact, McCoy told her that he had written a program to wipe pornography off of his computer. Martinetto saw that McCoy had linked together hard drives in a RAID system—an advanced system rarely seen in personal computers and typically seen in computers acting as servers. Finally, when Garrett first looked at McCoy's hard drive, he saw that the hard drive was unformatted, suggesting that McCoy was trying to hide something. Taken together, these facts provided reasonable suspicion that McCoy was again using his computer to distribute obscene materials or store child pornography.

No less intrusive search of McCoy's computer would have been effective in furthering the government's interests. McCoy possessed a large number of hard drives, and he had considerable expertise with computers. Given that even amateur computer users can make it difficult to find an incriminating file on a single hard drive, the government had a legitimate interest in removing McCoy's computers and having them thoroughly inspected by a probation officer with the necessary expertise and software.

In sum, the Court concludes that McCoy's Fourth Amendment rights were not violated because both Martinetto's removal of McCoy's computer equipment from his home and Garrett's initial warrantless search of McCoy's hard drive were authorized by the search condition and supported by reasonable suspicion.[3]

### B. Search Warrant

McCoy argues that the search warrant issued by Judge Langstaff was the fruit of a poisonous tree and therefore all evidence that officers found pursuant to the search warrant must be suppressed. But the Court has held that the tree was not poisonous—i.e., that Martinetto's seizure and Garrett's search were not unlawful—and thus McCoy's argument fails.

The Court also agrees with the R&R that even if Martinetto's seizure and Garrett's search were unlawful, the evidence discovered pursuant to Judge Langstaff's search warrant should not be suppressed. The officers who searched McCoy's computer pursuant to that warrant reasonably relied "on a search warrant issued by a

---

[3] The federal courts of appeals disagree about the legal standards that apply to a search of a probationer when that search is *not* authorized by a search condition. Some courts require probable cause and a warrant in those circumstances. *See, e.g.*, *United States v. Carnes*, 309 F.3d 950, 961-63 (6th Cir. 2002); *United States v. Bradley*, 571 F.2d 787, 788-89 (4th Cir. 1978). Other courts have been satisfied by something less than probable cause and have not required a warrant. *See, e.g.*, *United States v. Yuknavich*, 419 F.3d 1302, 1308-11 (11th Cir. 2005); *United States v. Keith*, 375 F.3d 346, 349-51 (5th Cir. 2004). The Eighth Circuit has not addressed the issue, and the Court need not address it here, as the Court has found that the actions of Martinetto and Garrett were authorized by the search condition.

detached and neutral magistrate." *United States v. Leon*, 468 U.S. 897, 907 (1984). Special Agent Cory E. Brant, who filed the affidavit in support of the search warrant, accurately informed Judge Langstaff of how officers found facts supporting probable cause; Brant truthfully asserted in the affidavit that Garrett found child pornography when he "conducted a preliminary analysis of the contents of computer hard drives recovered from [McCoy's] residence." June 29, 2015 Hr'g Ex. 2 at 5. Without question, the affidavit provided sufficient evidence to support a finding a probable cause. No one suggests that Judge Langstaff was anything other than detached and neutral. And the warrant issued by Judge Langstaff was valid on its face. The *Leon* rule therefore applies. *See United States v. Phillips*, 88 F.3d 582, 586 (8th Cir. 1996) (outlining four exceptions to the *Leon* rule, none of which apply here).

Dated: December 17, 2015          s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge